**Julia DOSCHER, Plaintiff,**

**v.**

**The SEMINOLE COMMON CONSOLIDATED SCHOOL DISTRICT NUMBER ONE, GAINES COUNTY, TEXAS, et al., Defendants.**

**Civ. A. No. 5-1224.**

United States District Court,
N. D. Texas,
Lubbock Division.

July 19, 1974.

Brad Crawford, Jr., Crenshaw, Dupree & Milam, Lubbock, Tex., for plaintiff.

Don Graf, George W. McCleskey, Nelson, McCleskey, Harriger & Brazill, Lubbock, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case was tried before the court without a jury on the 15th and 16th days of July, 1974, with all parties and their attorneys present. After considering the evidence, the argument and briefs of counsel, and the pleadings in this case, the court files this memorandum opinion which shall constitute its Findings of Fact and Conclusions of Law.

Although the Seminole Common Consolidated School District Number One is not a "person" within the meaning of 42

U.S.C. § 1983, plaintiff has alleged a cause of action based upon deprivation and violation of her First and Fourteenth Amendment rights to the Constitution of the United States and has satisfactorily proven to the court that the value of the matter in controversy exceeds $10,000, exclusive of interest and costs, and such allegations and proof by the plaintiff give this court jurisdiction over the common school district because of the federal questions in this case arising under the Constitution of the United States, that is the First and Fourteenth Amendments to the Constitution and 28 U.S.C. § 1331. Jurisdiction over the individual defendants in this case, a former school superintendent of the district, and two present members and one former member of its board of trustees, is present under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). Therefore, this court has jurisdiction over the defendants in this action. Plaintiff seeks reinstatement in her old position as a first grade teacher and recovery of attorney's fees.

The evidence shows that the plaintiff, Mrs. Julia Doscher, had been continuously employed as a first grade teacher by the defendant school district for twenty years but that her contract was not renewed for the 1973–1974 school year. For several years prior to this non-renewal, complaints had been received by the present and former members of the board of trustees of the school district concerning her effectiveness as a teacher for certain children and in some instances parents of children requesting that their first graders be assigned to another teacher. The knowledge of these complaints that had been made in the past as well as similar complaints made during the 1972–1973 school year, her last year of employment, were well known to the members of the school board in the 1972–1973 year.

In May of 1972, after her contract had been renewed for 1972–1973, Mrs. Doscher contacted by telephone two of the members of the school board and in these conversations relayed that it was her opinion that her elementary school principal, Mr. Nix, was destroying the school system and charged him with acts and attitudes that she felt made him unfit to act as a principal of this elementary school. Mr. Nix reported this to his superintendent, Mr. Bramlett, one of the defendants in this case, and Mr. Bramlett wrote a letter to the plaintiff, (Pltf's Ex. # 1) expressing his displeasure "in your contacting Board Members in May of 1972 and the remarks which you made to them." He further indicated because of this incident, and other problems over the years, that he was dissatisfied with her performance as a teacher and could not recommend her for reelection to the staff. This letter was dated August 21, 1972. As indicated in the letter, conferences were held between the principal who took Mr. Nix' place, Mr. Gandy, Superintendent Bramlett, and the plaintiff. At such time, Mrs. Doscher had already been reemployed for the 1972–1973 school year on a one-year contract basis.

Mrs. Doscher continued to teach under her same position in the year 1972–1973 and her personnel file, (Pltf's Ex. # 5) indicates that when the occasion arose in March of 1973, her principal recommended her as a teacher who should be reemployed for the subsequent 1973–1974 school year. An examination of this file indicates that, with very few exceptions, the appraisal of her work by the administrators of the school board gave her satisfactory to high marks.

The policies of the school district required the school board to receive recommendations from the administration, prior to March 15th of each year, as to the teachers that should be reemployed or not reemployed for the ensuing year. Accordingly, at a meeting on March 12, 1973, the school board met for the purpose of considering teacher contracts for the 1973–1974 year. At this meeting Principal Gandy recommended the plaintiff for renewal and Superintendent Bramlet joined in the recommendation. Because of the complaints that had been lodged with individual members of the

board by parents and others prior to the meeting, the board engaged in a lengthy discussion about Mrs. Doscher's qualifications and effectiveness as a teacher. When asked, on three or four occasions, if he wished to continue his recommendation of Mrs. Doscher, Superintendent Bramlett finally withdrew his recommendation although he had originally recommended her partly out of loyalty to the principal. When he withdrew his recommendation before the board at this meeting, he indicated that he did not think she was a person qualified to teach the first grade and he would not want her to teach his child. The board then voted, two members voting for renewal of the plaintiff's contract, four voting against the renewal, and one member abstaining. As a result of this action, Mrs. Doscher, the plaintiff, was not employed for the 1973–1974 school year.

If Mrs. Doscher had been denied a renewal of her contract because of an exercise of her rights under the First Amendment, this court would be justified in concluding that such non-renewal was impermissible under the Constitution and would order her reinstatement. Pickering v. Board of Education, 391 U. S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1967); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Bradford v. Tarrant County Junior College, 492 F.2d 133 (5th Cir. 1974); Sterzing v. Fort Bend Independent School District, 496 F.2d 92 (5th Cir. 1974).

■ Three of the school board members who voted for non-renewal testified at the trial. The court finds as a fact that these board members based their vote, not on any recommendations made by the superintendent. Although the board was aware that Superintendent Bramlett had written a letter to Mrs. Doscher in August of 1972, they were not aware of its specific contents and there was no discussion at the board meeting that would indicate in any way that the non-renewal was based upon her remarks to the individual members of the school board.

This court specifically finds that the board of trustees of the Seminole Common Consolidated School District Number One determined, independent of any alleged remarks made by Mrs. Doscher, that she would not be given a new teaching contract for the 1973–1974 school year, and in fact their decision was based upon the information as to her teaching qualifications received by the individual board members from outside sources. It is not the function of this court to make a determination as to the wisdom of the board's decision so long as there does not appear to be any arbitrary or capricious action, which is totally lacking in this case.

Plaintiff further complains and alleges that she was denied a hearing before the board of trustees in the manner required by the Constitution and by the rules of the board itself. She alleges that she has been deprived of property and liberty rights protected under the Fourteenth Amendment, and that the failure to give her a satisfactory hearing which comports with the constitutional requirements of due process and of the board's own rules affords grounds for relief.

Mrs. Doscher learned on the afternoon of March 13, 1973, the day after the school board action, that her contract would not be renewed. This was conveyed to her orally by her principal. She immediately demanded a hearing in writing, through her attorney, (Pltf's Ex. #2) and the school board, through its president, replied on March 21, 1973 (Pltf's Ex #3) granting such a hearing at 8:00 P.M. on Monday, March 26, 1973. Prior to the hearing, and with the exception of the letter of August 21, 1972, Mrs. Doscher was not advised or given any reasons why her contract was not renewed for the next school year. The meeting was held and a transcript of the meeting has been introduced into evidence. (Pltf's Ex. #4). The plaintiff and her attorney were present at

the hearing as were members of the board of trustees and the school superintendent and Mrs. Doscher was permitted to present several witnesses who attested to her effectiveness as a teacher. At this meeting the board did not give her any reasons for the non-renewal of her contract even though she requested such reasons. The evidence shows that at the time of the hearing, the only charge which Mrs. Doscher had any knowledge of that would relate to the reason for her non-renewal, was contained in the letter of August 21, 1972. This letter was not from the board, nor was it written with their knowledge. At the close of the hearing the board refused to take any further action with respect to the renewal of Mrs. Doscher's contract.

This hearing falls far short of meeting the requirements of a due process hearing as required by Ferguson v. Thomas, 430 F.2d 852, 856 (5th Cir. 1970), and as required by the board's own rules (Pltf's Ex. #6). Mrs. Doscher was not advised of the cause or causes of her termination, she was not advised of the names of witnesses or the nature of the testimony against her, and she was not accorded a meaningful opportunity to answer the charges against her although she was permitted to call witnesses in her defense. Therefore she was totally ignorant and unaware of any charges against her, insofar as the record in this case indicates, and to afford her a hearing under these conditions would be meaningless and useless and not be the type of hearing that should be held (if she is entitled to a hearing) on the questions of the non-renewal of her contract.

But, even if this court has found and concluded that the hearing before the school board does not meet the requirements of the Constitution, this does not place the plaintiff automatically in the position of gaining the remedies she seeks in this case.

The law requires that the plaintiff be deprived of a "property" or a "liberty" interest before such plaintiff can complain and secure relief for the failure of a school board or persons acting under color of state law to afford a hearing that meets the due process requirements. Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972); Moore v. Knowles, 482 F.2d 1069 (5th Cir. 1973). Previously it had been the rule of the decisions of the Fifth Circuit, Ferguson v. Thomas, *supra,* that the mere subjective expectancy of reemployment by a public school teacher would be sufficient to require that a hearing be afforded that comported with due process requirements. But a mere subjective expectancy of reemployment is no longer sufficient, Board of Regents v. Roth, *supra*; Perry v. Sindermann, *supra*; Moore v. Knowles, *supra.*

First, with respect to the "liberty" interest of the plaintiff, the evidence in this case does not disclose any such interests possessed by the plaintiff or that were denied to her by any action of the defendants. Although she was not reemployed by the defendant school district, there were several school districts within a reasonable distance of her home, within approximately 45 miles, and she made no attempt to secure employment from these districts or from any other prospective employer and the court cannot find that her right to contract has been in any way interfered with by the defendants. Further, there is no evidence that she was deprived of any other liberty interest as that definition of liberty is given in Board of Regents v. Roth, *supra.* The court concludes that the plaintiff has not shown a deprivation of liberty in this case which would require the board to grant the plaintiff a hearing.

Lastly, the plaintiff would be entitled to recover in this case when she was denied a meaningful hearing should it be shown from the evidence that she was possessed of some constitutionally protected property right or interest and that such right or interest was taken

from her or that she was deprived of the enjoyment of this right or interest by the defendants.

The defendant school district and its board of trustees are creatures of the Legislature of the State of Texas and are accordingly given certain powers and responsibilities, and the exercise of these powers are those granted by the Legislature and are subject to those statutory limitations. Peevy et al. v. Carlile, 135 Tex. 132, 139 S.W.2d 779 (1940). With respect to the subject under consideration, Art. 22.09 of the Texas Education Code empowers the trustees of a common school district, and the Seminole school district is a common school district, with the right to enter into *written* contracts to employ teachers and other personnel. This law specifically provides that the contract shall be for a term not to exceed three years, *provided that*: "all contracts for 12 months or more shall be approved by the County Superintendent of the county having jurisdiction over the school district." It is undisputed that the written contracts of the plaintiff with the school district for each of her twenty years were for a one-year term only and the record in this case does not disclose that the County Superintendent approved any contract at any time for a longer period between this district and the plaintiff. Further, the school district in this case has not adopted the provisions of the Continuing Contract Law of the State of Texas as indicated by its action on September 11, 1967. (Defts' Ex. #1). Therefore, the defendants were without authority to contract with the plaintiff for a term in excess of one year and her one-year term expired at the end of the 1972–1973 school year, and any contract for a longer period would have been voided unless the conditions set forth in Art. 22.09 were complied with. There has been no property right of the plaintiff created by her written contracts or by the acts of the Texas Legislature.

■ However, it has been held that *de facto* tenure can also give rise to such a property interest that is protected by the due process requirements of the Constitution. This must be more than a mere subjective expectancy of such renewal on the part of the teacher. Board of Regents v. Roth, *supra*; Perry v. Sindermann, *supra*; Moore v. Knowles, *supra*. Here it was the desire of the school board, as expressed by its members while testifying at the trial, that teachers be afforded permanency of employment, but their desire in this respect falls far short of any mutually explicit understanding between the defendants and plaintiff that would support the plaintiff's claim of entitlement to any property benefit. The very contrary is shown by the evidence. Plaintiff recognized that her contracts were for only one year and that they must be renewed each year upon recommendation by the administration and through action by the board. A superintendent of this school district, many years before the incident in question, had indicated to plaintiff that as long as her services were satisfactory she could expect reemployment, but this is not sufficient to base a finding of *de facto* tenure. Further, the board by its own actions has refused to adopt the Continuing Contract Law, which would provide for tenure as authorized by the Texas Legislature, and the fact that there were successive renewals of the teachers' contracts does not constitute evidence of *de facto* tenure or of any implied agreement on the part of the school district to a teacher of a contractual right of renewal. Hix v. Tuloso-Midway Independent School District, 489 S.W.2d 706 (writ ref., 1972). *De facto* tenure is not present under these facts.

■ In those cases where the plaintiff is deprived of a property or liberty interest, a due process hearing is required. Such property interests and their dimensions are defined by existing rules or circumstances that stem from an independent source such as state law, Perry v. Sindermann, footnote 7, and it appears from the Texas Education Code, Art. 22.09; V.T.C.A., and Hix v. Tuloso-Midway Independent School District, *supra,* that it is the law in Texas that the plaintiff in this case has no contractual

claim, *de jure* tenure or *de facto* tenure, or other property right.

In conclusion, the plaintiff's exercise of her rights of free speech had no part in the decision of the board to not renew her teaching contract. The hearing which was held after the decision not to renew it did not meet the constitutional requirements of due process nor did it meet the rules of the Board of Trustees of the Seminole Common Consolidated School District Number One concerning such a hearing. However, the evidence does not show that the plaintiff was deprived of any liberty or property interests and she was therefore not entitled to a hearing which meets every requirement of constitutional due process. The plaintiff did not have any right by contract to teach after the 1972–1973 school year, the laws of the State of Texas would permit such a contract only when entered into in accordance with the statutory powers granted to a school board in this instance, and the facts do not give rise to any *de facto* tenure as any mutually explicit understanding between the parties is totally lacking.

Therefore judgment will be entered for and on behalf of the defendants and costs taxed against the plaintiff.